## SUMMARY SHEET

This summary sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by the Maine Rules of Court or by law. This form is required for the use of the Clerk of Court for the purpose of initiating or updating the civil docket. (SEE INSTRUCTIONS ON REVERSE)

**I** County of Filing or District Court Jurisdiction:
KENNEBEC

**II.** CAUSE OF ACTION (Cite the primary civil statutes under which you are filing, if any.) *Pro se* plaintiffs: If unsure, leave blank.

**III.** / NATURE OF FILING
- ☑ Initial Complaint
- ☐ Third-Party Complaint
- ☐ Cross-Claim or Counterclaim
- ☐ If Reinstated or Reopened case, give original Docket Number _____
- (If filing a second or subsequent Money Judgment Disclosure, give docket number of first disclosure)

**IV** ☐ TITLE TO REAL ESTATE IS INVOLVED.

**V.** MOST DEFINITIVE NATURE OF ACTION (Place an X in one box only) *Pro se*: If unsure, leave blank

### Personal Injury Tort
- ☐ Property Negligence
- ☐ Auto Negligence
- ☐ Medical Negligence
- ☐ Product Liability
- ☐ Assault/Battery
- ☐ Domestic Torts
- ☐ Other Negligence
- ☑ Other Personal Injury Tort

### Non-Personal Injury Tort
- ☐ Libel/Defamation
- ☐ Auto Negligence
- ☐ Other Negligence
- ☐ Other Non-Personal Injury Tort

### GENERAL CIVIL (CV)
**Contract**
- ☐ Contract

**Declaratory/Equitable Relief**
- ☐ General Injunctive Relief
- ☐ Declaratory Judgment
- ☐ Other Equitable Relief

**Constitutional/Civil Rights**
- ☐ Constitutional/Civil Rights

**Statutory Actions**
- ☐ Unfair Trade Practices
- ☐ Freedom of Access
- ☐ Other Statutory Actions

**Miscellaneous Civil**
- ☐ Drug Forfeitures

- ☐ Other Forfeitures/Property Libels
- ☐ Land Use Enforcement (80K)
- ☐ Administrative Warrant
- ☐ HIV Testing
- ☐ Arbitration Awards
- ☐ Appointment of Receiver
- ☐ Shareholders' Derivative Actions
- ☐ Foreign Deposition
- ☐ Pre-Action Discovery
- ☐ Common Law Habeas Corpus
- ☐ Prisoner Transfers
- ☐ Foreign Judgments
- ☐ Minor Settlements
- ☐ Other Civil

### CHILD PROTECTIVE CUSTODY (PC)
Non-DHS Protective Custody

### SPECIAL ACTIONS (SA)
Money Judgment
Money Judgment Request Disclosure

### REAL ESTATE (RE)
**Title Actions**
Quiet Title
Eminent Domain
Easements
Boundaries

**Foreclosure**
- ☐ Foreclosure for Non-pmt (ADR exempt)
- ☐ Foreclosure - Other
- Trespass
- ☐ Trespass

**Misc. Real Estate**
- ☐ Equitable Remedies ☐
- Nuisance
- ☐ Mechanics Lien    ☐ Abandoned
- ☐ Partition            Roads
- ☐ Adverse Possession ☐ Other Real Estate

### APPEALS (AP) (To be filed in Superior Court) (ADR exempt)
Governmental Body (80B)
- ☐ Administrative Agency (80C)
- ☐ Other Appeals

**M.R.Civ.P. 16B Alternative Dispute Resolution (ADR):**
☐ I certify that pursuant to M.R.Civ.P. 16B(b), this case is exempt from a required ADR process because:
- ☐ It falls within an exemption listed above (i.e., an appeal or an action for non-payment of a note in a secured transaction)
- ☐ The plaintiff or defendant is incarcerated in a local, state or federal facility
- ☐ The parties have participated in a statutory prelitigation screening process with _____
  (name of neutral) on _____ (date)
- ☐ The parties have participated in a formal ADR process with _____ (name of neutral)
  on _____ (date)
- ☐ This is a Personal Injury action in which the plaintiff's likely damages will not exceed $30,000, and the plaintiff requests an exemption from ADR.

VII.    (a)  ☑  PLAINTIFFS (Name & Address including county)
        or   ☐  Third-Party,   ☐  Counterclaim or Cross-Claim Plaintiffs
             ☐  The plaintiff is a prisoner in a local, state or federal facility.

        David and Denise Bourgoin
        1185 Battle Ridge Road
        Clinton ME 04927
        KENNEBEC

        (b)  Attorneys (Name, Bar Number, Firm Name, Address,
             Telephone Number)
             (If *pro se* plaintiff, leave blank)

        Steven D. Silin
        Maine Bar Roll No. 2686
        Berman & Simmons, P A
        129 Lisbon St
        PO Box 961
        Lewiston ME 04243-0961
        207 784-3576

        If all counsel listed do NOT represent all plaintiffs,
        specify who the listed attorney(s) represent.

VIII.   (a)  ☑  DEFENDANTS (Name & Address including county)
and/or  ☐  Third-Party,   ☐  Counterclaim or Cross-Claim Defendants
             ☐  The defendant is a prisoner in a local, state or federal facility

        Stanley Medical Research Institute          Matthew Cyr
        E Fuller Torrey, M D                        Lorie Stevens

        (b)  Attorneys (Name, Bar Number, Firm Name, Address,
             Telephone Number)

        If all counsel listed do NOT represent all defendants,
        specify who the listed attorney(s) represent

X.      RELATED CASE(S) IF ANY _____

___Assigned Judge/Justice_____     ___Docket Number___ ___ ___

Date:    May 4, 2005                    Steven D. Silin
                                        Name of Lead Attorney of Record or *Pro Se* Party
                                        Steven D. Silin

                                        Signature of Attorney or *Pro se* Party

STATE OF MAINE
KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-05-

DAVID AND DENISE BOURGOIN,  )
                                 )
     Plaintiffs              )
                                   )
v.                                   )      COMPLAINT
                                   )
THE STANLEY MEDICAL       )
     RESEARCH INSTITUTE,    )
E. FULLER TORREY, M.D.,    )
MATTHEW CYR, and         )
LORIE STEVENS             )
                                   )
     Defendants           )

NOW COME Plaintiffs David and Denise Bourgoin and complain against Defendants

The Stanley Medical Research Institute, E. Fuller Torrey, M.D., Matthew S. Cyr, and Lorie

Stevens (collectively, "Defendants") as follows:

### INTRODUCTION

1      David and Denise Bourgoin are the surviving parents and next of kin of Michael

Bourgoin who died, while still a minor, suddenly on February 29, 2000. From approximately

1998 to 2003, Defendant The Stanley Medical Research Institute employed and directed

Defendant Matthew S. Cyr, the former Maine Funeral Inspector and after-hours receptionist for

the Maine Medical Examiner's Office, to harvest approximately 99 human brains and other

organs from bodies, including Michael Bourgoin's body, in the Maine Medical Examiner's

Office. Cyr shipped the brains and other organs to The Stanley Medical Research Institute,

which paid Cyr a total of about $150,000 over the years. Defendants failed to obtain informed

consent from the surviving families and loved ones of the deceased, including Michael

Bourgoin's family, before taking the organs  As a result of their actions, Defendants have violated the rights of the families, including the Bourgoins and numerous others like them, and caused them substantial emotional distress

## PARTIES

2.    David and Denise Bourgoin, husband and wife, are residents of Clinton, Maine

3.    Defendant The Stanley Medical Research institute ["SMRI"] is a corporation organized and existing under the laws of the State of Connecticut, with a principal place of business located at 5430 Grosvenor Lane, Suite 200, Bethesda, Maryland 20814. SMRI is engaged in medical research regarding mental illnesses, including schizophrenia and bipolar disorder. SMRI is neither a health care provider nor a health car entity within the meaning of the Maine Health Care Security Act, 24 M.R.S.A. § 2501 *et seq*.

4.    Upon information and belief, Defendant E Fuller Torrey, M D ("Dr. Torrey") is an individual residing in Elkton, Maryland  Dr. Torrey serves as a Trustee of the Stanley Foundation and was its Executive Director until 2003 when he became Associate Director for Laboratory Research. None of the acts attributable to Dr. Torrey herein involve the provision of "health care services" within the meaning of the Maine Health Care Security Act, 24 M.R.S.A. § 2501 *et seq*.

5.    Defendant Matthew Cyr is an individual residing at 81 School Street, Bucksport, Hancock County, Maine.

6.    Defendant Lorie Stevens is an individual residing at 81 School Street, Bucksport, Hancock County, Maine.

2

## BACKGROUND

7.    In 1989 the Stanley Foundation Research Programs were established by Theodore and Vada Stanley to support research on schizophrenia and bipolar disorder

8.    Dr. Torrey had previously served in a supervisory post at the National Institute of Mental Health and the Stanleys approached him about assisting their research efforts. Dr. Torrey's stated objective has been to find a cure for schizophrenia

9.    From 1989 until 1998 research programs were carried out under the auspices of the National Alliance for the Mentally Ill Research Institute. This organization transferred substantially all of its assets to SMRI in 2002.

10    SMRI issues numerous grants each year for brain research and "treatment trials" dealing with schizophrenia and other severe mental illnesses

11    As part of its work and central to it was the establishment of the Stanley Brain Research Laboratory and Brain Collection in 1994. The "Brain Bank", though owned by SMRI, is or has been located at the Department of Psychiatry of the Uniformed Services University of the Health Sciences ("USUHS") on the grounds of the Naval Hospital in Bethesda, Maryland. Its purpose is to collect postmortem brains and distribute tissue from those brains without charge to research groups working on schizophrenia and bipolar and manic-depressive disorders. Specifically, as Dr. Torrey explained in a 1998 article, he sought to assist researchers by getting "better brains, brains of people younger and not dead long "

12.    Upon information and belief, the SMRI Brain Bank is not an "accredited" tissue bank.

13.    Upon information and belief, SMRI initially obtained brains by setting up a network of "harvesters" throughout the United States

3

14.   Upon information and belief, SMRI and Torrey employed up to one half dozen pathologists in the offices of medical examiners in *inter alia* Minnesota, California and Washington, paying them as much as $100,000 a year to find and secure fresh brains.

15.   Upon information and belief, SMRI paid these pathologists, including at one time Dr. Margaret S. Greenwald, currently the Maine Medical Examiner, to come to Bethesda, Maryland to be trained in standardized collection techniques that the Foundation desired.

16.   Upon information and belief, SMRI paid all expenses associated with training these pathologists.

17.   Upon information and belief, SMRI also paid all expenses associated with collecting brain specimens

18.   Upon information and belief, potential donors for the Brain Bank are identified by personnel in or working with the medical examiners' offices. According to information on forms developed by SMRI, a pathologist is supposed to contact the family of the deceased to report the death and cause and to seek permission for donation of the brain and release of the deceased's medical records. If permission is granted, the pathologist is supposed to conduct a brief interview to ascertain information about the deceased's background, education, job history, medical and family history, drug and alcohol use.

19.   As of 1999, SMRI's brain collection included "over 100 specimens".

20.   As of December 2002, the Brain Bank was the repository of one of the largest brain collections in the world, including more than 500 "specimens."

21.   As of 2002, the Brain Bank had shipped out over 100,000 sections of brain tissue to over 100 researchers on several continents.

4

22.     At relevant times herein, the State of Maine had no written procedures for how the
Medical Examiner's Office was to handle scientific donations of tissue for research purposes,
though, on information and belief, it did discuss and obtain cooperative guidelines regarding
obtaining consent for and removing transplantable organs with other organ provider
organizations [OPO's]

23.     In 1998, SMRI, through Torrey, again approached Margaret Greenwald, M.D., newly
appointed Medical Examiner in Maine seeking to have her "work with us again" and offering to
pay a rate of "approximately $1000 a specimen."

24      Upon information and belief, Dr Greenwald put Torrey in touch with Matthew Cyr.

25.     Upon information and belief, at Dr. Greenwald's request, Matthew Cyr was also the
designated liaison between her office and the New England Eye and Tissue Bank and New
England Organ Bank.

26.     Matthew Cyr was not and is not a pathologist or a medical doctor.

27      Upon information and belief, at various times relevant hereto, Cyr was appointed to the
post of State Funeral Inspector for the State of Maine Board of Funeral Services. In addition, Cyr
was employed as an independent contractor for the Maine Medical Examiner's Office
responsible for receiving after-hours telephone calls regarding deaths and coordinating the
collection of bodies for autopsy

28.     Despite Cyr's lack of qualifications and despite the fact that, unlike SMRI's other
harvesters, Cyr was not an employee of a public agency but a private person with a for-profit
relationship with the Maine Medical Examiners' Office, SMRI and Torrey hired Cyr as their
harvester in Maine from approximately 1998 to 2003

5

29     Despite the fact that payment "per organ" is generally considered unethical in the field of organ donation, upon information and belief, initially, SMRI directly paid $1,000 cash to Cyr personally for each brain harvested.

30.    Upon information and belief, from March 2000 until sometime in 2003, SMRI paid Cyr a fixed salary of $1,000 per month plus $1,000 per brain harvested

31     Upon information and belief, at all times relevant hereto, Lorie Stevens assisted and facilitated Cyr's work for SMRI

32     In a July 8, 1998 letter to Cyr, SMRI confirmed that SMRI would furnish the requisite tools and supplies to Cyr for "processing," including cutting tools, pans, shipping containers, and dry ice.

33     As an indication of SMRI's direction of Cyr, according to a sworn affidavit of Dr Torrey dated March 14, 2005, SMRI "dictated" that Cyr "arrange and follow-up on brain donations to SMRI." SMRI assigned Cyr specific duties and responsibilities  Dr Torrey testified in an affidavit that "Mr. Cyr was responsible for identifying appropriate potential donations and obtaining consents for brain donations from Maine to SMRI  He was also responsible for preparing the brains and other tissue for shipment and collecting the brain donors' relevant medical records."

34.    At the same time, when shipping brains by Federal Express, Cyr usually identified himself on the packaging as being with the "Stanley Foundation."

35     On information and belief, Cyr used the email address "brnbank625@CS.com".

6

36      On information and belief, Cyr was also provided with a certain form to document conversations with families of potential donors, a true copy of which is attached hereto as *Exhibit A (the "Form")*

37.     Upon information and belief, SMRI had prepared the Form and issued it to Cyr to serve as a uniform, common script for seeking consent to donation of brains and other organs. The Form states in part "This is _____ of the Stanley Foundation." The Form later states "Would you like to receive correspondence from the Stanley Foundation?"

38      The Form states: "I seek your authorization and permission to remove the following tissue:" and lists several categories, including "brain". Nowhere does the form state that the family member of the deceased be asked to authorize donation of the whole brain, the entire brain, or any whole or entire organ

39      The Form also seeks authorization for the release of all of the donor's medical records, yet contains no provision for a signature of an authorized person.

40      On information and belief, SMRI also provided Cyr with a form for collecting "basic demographic information" about the donors and another for collecting "developmental" information, attached hereto as *Exhibits B & C*. The directions indicate that the sheets are to be filled out "by the pathologist following a telephone interview with an appropriate family member".

41.     SMRI terminated Cyr's services only after a family complained of his wrongdoing. The Medical Examiner's Office terminated Cyr's services in October, 2004

42.     Of the "over 500" brains collected by SMRI through 2003, at least 99 of them came from Maine. Consent forms, however, are purportedly missing for at least 31 of these brains and

7

significant information is missing or peculiar about the 68 forms that do exist. Upon information and belief, a good number of the forms that do exist have one or more of three major problems: (1) how the information was gathered is not indicated; if they were filled out per telephone contacts (there is no signature of a family member), the calls were not recorded and the forms are "witnessed" by only Matthew Cyr and Lorie Stevens, (2) forms do not have or family members were not given contact information about the donation, and (3) the persons giving consent were either never given or never saw the forms or did not understand they were giving consent for the removal and shipment of the entire brain of their family member.

43.    SMRI and Cyr were aware of Cyr's conflicting roles as harvester, funeral services inspector, independent contractor for the Medical Examiner's Office, and liaison with other major eye and organ donation organizations and took advantage of Cyr's overlapping roles to gather more organs.

44.    At all times relevant hereto, the actions of Defendant Cyr were authorized and directed by Defendants SMRI and Torrey, who approved and ratified his conduct.

45.    At all times relevant hereto, the employment relationship between Defendant SMRI and Defendant Cyr made possible the commission of the tortious conduct complained of herein.

## UNAUTHORIZED HARVESTING OF MICHAEL BOURGOIN'S BRAIN

46.    Michael Bourgoin, at the time 17 years old, was seriously injured in a collision between a snowmobile and a truck on February 13, 2000. He suffered a fracture of the left tibia and femur. He was discharged from the hospital to his parents' care on February 22, 2000.

47.    Michael complained of constant back pain and difficulty swallowing while in the hospital and after arriving home. He was constipated and not eating. Soon, he began to complain of

8

difficulty breathing, as well. He and his parents were told these were common occurrences after intubation for surgery

48.     On the morning of his death, Michael said he did not feel well. Denise fixed him a milkshake. Michael had two sips and then vomited. David and Denise immediately put Michael into the car to take him to the hospital. Michael became unresponsive in the car. A rescue unit was called but they were unable to resuscitate him. Michael Bourgoin was pronounced dead in the Maine General Medical Center Emergency Room in Waterville at 7:10 am. on February 29, 2000.

49.     The Medical Examiner, Dr. Margaret Greenwald and "Cheryl" at the Maine Eye and Tissue Bank were both notified of Michael Bourgoin's death. The Report of Death was assigned a case number, 2000-0375-A. According to the Report of Death, representatives of the New England Organ Bank also had contact with the M.E's office about donation of organs. Around 9:49 a.m "Lila NEOB got in touch č Michael's parents and want to be called back in a couple hours when they can deal č this better." David Bourgoin also recalls this conversation.

50.     According to Denise and David, Dr. Greenwald called them between 9:50 and 11:27 am. to report that Michael apparently died as a result of three rips in his aorta from the snowmobile accident. It was a 5 minute conversation that focused on what had happened that morning and whether it could have been repaired.

51.     The Record of Death next reports that "11:28 - Trina NEOB said she has consent for everything. She was told aut will begin @ 1:00 p.m." Denise also recalls this conversation. She says they were told that NEOB could not harvest organs because Michael had died hours before,

9

but could harvest tissues  Denise answered many questions about Michael's lifestyle and habits, such as he did not drink or take drugs and that  he only took createne for body building

52.     There also exists a NEOB & NE Eye and Tissue Transplant Bank "Recorded Telephone or Other Recorded Authorization" form confirming this conversation took place  It shows that Irina S  Charbonneau spoke to Denise Bourgoin, as decedent's mother, on 2/29/00 @ 11:30 am  TSC indicated a telephone number at 1-800-446-6362  A "Witness to Consent" shows "Todne I Texeira", provided a signature  *See Exhibit D* hereto

53     A "Consent for Organ Tissue Donation" form accompanied the Authorization  Under the "Description of Gift" section, the following were circled "no": kidneys, liver, heart, lungs, pancreas, small bowel, spleen and lymph nodes, bone marrow  The following were circled 'yes': heart for valves, pericardium, skin, eyes, bone and associated tissues, blood vessels  A line was crossed through the words "Dura     Yes   No"  Consent was given to use the organs and tissues donated for medical research, according to question 2, however, the form is not signed or witnessed  At the top of the form are the handwritten words, "In agreement c [in consultation with] father - speaking on behalf of  [sic]"  *See Exhibit E* hereto

54.     According to Denise and David, no one else called that day besides family  The couple was in agreement that they never would have donated tissues for research – only certain donations for immediate transplant to save someone's life

55.     A form "Consent for Donation, Testing and Tissue Release" is attached hereto as *Exhibit F*. The consent form is dated 2/29/00 but no information appears in the blanks for "date", "time", "tech", "ME #", "consent recorded#", "side", "started at" or "stopped at"  In the disclosure paragraph the word "recorded" is crossed out and replaced with "witnessed."

10

56.    The information was purportedly obtained by Matthew Cyr and witnessed by Lorie

Stevens. Supposedly,"authorization" to remove "brain" tissue, as well as the liver, spleen,

pituitary and dura were all given– in direct contrast to the "no" given the NEOB  Permission to

use tissue for education and research was also purportedly obtained. Finally, authorization to

obtain Michael's complete medical information was purportedly obtained, even though no

signature of any next of kin appears on the form  The family member allegedly spoken to was

Denise Bourgoin

57.    Plaintiffs deny that this conversation occurred and claim any other suggestion that they

gave permission for the removal of their son's brain or brain tissue is false.

58.    A "Stanley Foundation Brain Research Laboratory Basic Demographic Information"

sheet and "Developmental Information" form also exist and appear to have been filled out by the

same person who executed the consent form. *See Exhibits G & H*

59.    The autopsy was conducted by Dr  Greenwald on February 29, 2000 between 1:30 and

3:10 p.m  She notes "[t]he brain is submitted to the Stanley Foundation for examination per

request of family "  The Medical Examiner's Office Report of Inquiry was not released until June

28, 2000 and the official autopsy report was not released until September 11, 2000

60.    SMRI received the brain on March 21, 2000.

61.    Denise and David were in agreement that they never would have agreed to the donation of

a brain for medical research  The brain, unlike some of the other organs, is more personal to them

and they certainly would not have wanted Michael's brain taken for purposes of experimentation

or other organs taken if it was not targeted to specific donees

11

62.     In the fall of 2004, Denise a call from an investigator for the State's Attorney General's Office asking about a brain donation for Michael and whether they had consented to it. The office was doing an investigation in response to a lawsuit where it was revealed that there was some fraudulent consents obtained for the purposes of harvesting and selling brains to the Stanley Medical Research Institute in Maryland

63      Denise became immediately distraught. She started vomiting. She made it clear that she had never given such consent.

64      Since learning of the mishandling of Michael's body, Denise and David have suffered extreme mental and emotional distress. Their pain over their son's death four and one-half years before had been lessening, but the discovery that his entire brain and other entire organs had been removed, without their consent, has plunged them back into the early stages of grief. They have lost confidence that the body that was ultimately buried was even their son.

## COUNT I
### Violations of the Uniform Anatomical Gift Act

65.     Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

66      The Uniform Anatomical Gift Act, 22 M.R.S.A §§ 2901-2911 ("the Act"), provides that:

Any gift by a [next of kin, guardian, or other authorized] person designated in section 2902, subsection 2 shall be made by a document signed by him, or made by his telegraphic, recorded telephonic or other recorded message

22 M.R.S A  § 2904(5).

67      Defendants failed to obtain an appropriate signed document or recorded message from Plaintiffs before harvesting the brains and/or other organs of their son in violation of 22 M.R.S A. § 2904.

12

68.     The Act further provides that, "when a death occurs in a hospital," any request for

consent to an anatomical gift "shall be made in accordance with the following provisions":

     (A)     "The attending physician" or the "hospital administrator" or his
designee must be the person to request the next of kin "to consent to the gift of all
or any part of the decedent's body;" and
     (B)     The person making the requests for such gifts must be given
training in the appropriate procedures for making the request."

22 M.R.S.A. § 2910.

69.     The administrative rules established in accordance with the Act require that the person

requesting organ donations be trained in the legal requirements of the Act and the need to

complete "the medical records regarding organ donation requests." Maine Regulations 10-144,

Chapter 52, subchapter 3(C). These regulations, which became effective in 1987, also require

training that includes: (a) consideration of "the psychological, social, ethical and religious

factors" involved; and (b) how "to request organ donations in an appropriate manner." *Id.* at

subchapter 3(C)(3)-(4). Finally, the regulations require that persons requesting organ donations

be trained in regard to "[t]he family's right to refuse and the need to respect this right." *Id.* at

subchapter 3(C)(4).

70.     Maine Department of Human Services Regulations also require completion of particular

state forms to be included in "the decedent's medical records" when a request for an anatomical

gift is made. In order to "ensure that the intent of the [Maine organ donation] statute is met,"

"the request and its disposition" must be memorialized on the required form. *See Exhibit I*

71.     Matthew Cyr and Lorie Stevens were not attending physicians, nor hospital

administrators, nor designees. Cyr was not given the required training regarding appropriate

13

procedures for making such requests. The form that SMRI provided to Cyr, which he was

instructed to follow in obtaining consents was itself inadequate to obtain informed consent.

72     Defendants violated the Act and regulations promulgated thereunder by failing to

properly obtain informed consent of Plaintiffs at the death of their son entitling them to damages.

## COUNT II
### Negligence

73     Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

74.    Defendants as persons designated by the Medical Examiner's Office as potential handlers

of postmortem tissue, had a duty to exercise reasonable care in their dealings with Plaintiffs and

their son's body, and in their retention of, training of, and supervision of their harvesters

75.    Defendants had a duty to refrain from unreasonably interfering with the body of

Plaintiffs' son

76.    Defendants failed to exercise ordinary care in performing their duties and have been

negligent and reckless in their conduct. *Inter alia,* Defendants SMRI and Torrey created an

inadequate consent form for use by SMRI's harvesters; Defendants SMRI and Torrey hired and

retained a harvester who was unfit for the job for which he was employed and not properly

trained or supervised; Defendants wrongly suggested they had an association with the Medical

Examiner's Office in an effort to deceive those next of kin solicited for their consent for brain

and organ donation; Defendants tampered with, or induced others to tamper with, the body of

Michael Bourgoin obtaining his entire brain and other body parts without informed consent in

violation of Maine law and the rights of his parents; Defendants made false representations or

failed to obtain any consent at all as to what body parts would be taken; Defendants used or

14

allowed the use of misleading terminology such as references to "tissue" in obtaining entire

brains and other entire organs.

77. Defendants knew, or should have known, that Plaintiffs would suffer injury as a result of

Defendants' failure to exercise due care as described above.

78. Due to Defendants' negligence, Plaintiffs suffered and continue to suffer, injuries and

damages as described above and in an amount to be determined at trial.

## COUNT III
## Negligent Infliction of Emotional Distress

79. Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

80. Defendants, as persons designated by the Medical Examiner's Office as potential handlers

of postmortem tissue undertook a special relationship with donors of such tissue and their next of

kin and owed a duty of reasonable care to avoid inflicting emotional harm upon Plaintiffs.

81. Defendants breached that duty, proximately causing harm to Plaintiffs.

82. It was reasonably foreseeable that the above-described actions and statements by

Defendants would result in severe emotional distress to Plaintiffs and such distress did

proximately result.

83. Defendants are liable to Plaintiffs for damages in an amount to be determined at trial.

## COUNT IV
## Intentional Infliction of Emotional Distress

84 Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

85 Defendants intentionally, recklessly and wrongfully interfered with the corpse of

Plaintiffs' son.

15

86.     Defendants intentionally and/or recklessly inflicted severe emotional distress upon

Plaintiffs and Defendants knew or should have known that a likely result of their conduct would

be to inflict severe emotional distress upon them. Defendants' actions were extreme and

outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized

community.

87      As a direct and proximate result of Defendants' wrongful infliction of emotional distress,

Plaintiffs have suffered emotional distress so severe that no reasonable person could be expected

to endure it

88.     As a consequence of their wrongful conduct, Defendants are liable to Plaintiffs in

damages in an amount to be determined at trial, together with interest and costs.

## COUNT V
### Fraud

89.     Plaintiffs reallege all preceding paragraphs as if fully set forth herein

90.     If they did speak, Matthew Cyr falsely represented to the Bourgoins that Defendants

would obtain only "tissue" from their next of kin and failed to inform them that Defendants

would obtain whole organs instead.

91      Matthew Cyr and Lorie Stevens falsely reported that they had had contact with and

consent from Plaintiffs to remove the brain of and other tissue from their son

92      SMRI accepted these organs and tissue with full awareness that no true informed consent

had been given and no appropriate release of medical information had been obtained.

93.     SMRI never contacted Plaintiffs to verify or confirm their consent, or thank them for their

"gift".

16

94.     By creating and using a consent form that referred to "tissue" only, Defendants SMRI, Dr.
Torrey and Cyr falsely represented to Plaintiffs that only tissue samples would be taken from
their next of kin, and omitted to inform them that Defendants would in fact take whole organs
instead.

95.     By insuring Plaintiffs never saw or signed the form at all, and by having no follow-up
with the family, SMRI and Cyr made sure Plaintiffs were left uninformed about the extent of the
invasion of their son's body and privacy.

96.     The false information and misleading omissions of Defendants are referred to as the
"False Representations."

97      Defendants knew that the False Representations were false or acted in reckless disregard
as to the truth or falsity of the False Representations.

98      The False Representations were made for the purpose of inducing Plaintiffs to agree to
the taking of tissue from their son whereupon Defendants intended instead to harvest entire
brains and other organs from Plaintiff's deceased family member.

99.     In justifiable reliance upon the False Representations, Plaintiffs agreed or did not have the
opportunity to object to the taking of tissue from their next of kin and, as a proximate result,
suffered damages.

100     Defendants are liable to Plaintiffs for compensatory damages in an amount to be proved
at trial, together with interest, and costs.

## COUNT VI
### Negligent Misrepresentation

101.    Plaintiffs reallege all preceding paragraphs as if fully set forth herein

17

102.    Defendants supplied the False Representations in the course of their business, profession, or employment, or in a transaction in which they, and each of them, had a pecuniary interest.

103.    Defendants supplied the False Representations for the guidance of Plaintiffs in this transaction

104     As persons designated by the Medical Examiner's Office as potential handlers of postmortem tissue, Defendants had a special duty to use reasonable care in their dealings with the next of kin of deceaseds to which they had been referred

105     Defendants failed to exercise reasonable care or competence in communicating the False Representations.

106     Plaintiffs justifiably relied upon or was given no opportunity to object to the False Representation in the transaction that Defendants intended to influence by the information provided or omitted.

107     As a result of Defendants' False Representations, Plaintiffs suffered damages in the manner described above and in an amount to be proved at trial

## COUNT VII
### Conversion

108.    Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

109.    Plaintiffs had a quasi-property interest in the body of their son

110.    Plaintiffs had the right to possession and control of the body of their son at the time that Defendants removed, or caused to be removed, the organs of Michael Bourgoin without Plaintiffs' informed consent.

18

111. Defendants took the property wrongfully, and a demand for its return would have been useless

112 Plaintiffs suffered damages in the manner described above and in an amount to be proved at trial, together with interest, and costs

## COUNT VIII
## Violation of Racketeer Influenced and Corrupt Organizations Act ("RICO")

113 Plaintiffs reallege all preceding paragraphs as if fully set forth herein

114. From 1998 through 2003, SMRI and Cyr collectively operated as an ongoing, continuing enterprise for the harvesting of brains.

115 Torrey, for SMRI and with its consent and knowledge, directed the affairs of this enterprise

116 During this period, the conduct of Cyr and SMRI constituted multiple acts of mail or wire fraud in violation of 18 U S C §§ 1341 and 1343, to wit: Their willful and calculated use of unrecorded, incomplete and misleading telephone contacts to knowingly deprive Plaintiffs of the right of honest services at a time when families were guaranteed to be in distress, and their subsequent use of the mails to immediately dispatch a harvested brain constituted a scheme involving acts of artifice or deceit intended to deprive owners of their property, and the use of the mails and wires to further that scheme

117. These acts were related to the goals of the shared enterprise: the harvesting of brains But for the complaints filed in 2004, this pattern of criminal predicate activity would have continued

118. Plaintiffs were injured in that their property rights were interfered with by the conduct constituting the violation.

19

119.    Defendants, through their enterprise, violated 18 U.S.C. § 1962(c) which makes it unlawful for "any person employed by or associated with any enterprise engaged in ... interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Defendants also violated 18 U.S.C. § 1962(d) which prohibits conspiracies to violate other provisions of RICO.

120.    Plaintiffs are entitled to recover treble damages in an amount to be proved at trial, together with interest, costs and attorneys' fees.

## COUNT IX
### Punitive Damages

121.    Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

122.    Defendants' deliberate conduct was motivated by ill will toward Plaintiffs or was so reckless and outrageous that malice toward Plaintiffs is implied.

123.    As a consequence of their wrongful conduct, Defendants are liable to Plaintiffs for punitive damages in a sufficient amount to punish Defendants and to deter Defendants and others from such conduct in the future, plus interest, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter a judgment for damages, jointly and severally, against Defendants according to their liability for the respective counts of this complaint, for prejudgment interest and costs of suit, jointly and severally, against Defendants; for punitive damages against Defendants, jointly and severally, to make an example of them, in a sufficient amount to punish Defendants and to deter Defendants and others from such conduct in the future; and such other and further relief, including attorneys' fees, as the Court deems just.

20

Dated at Lewiston, this 4th day of May, 2005

Respectfully submitted,

BY: _____

Steven D. Silin, Esq
Bar Roll No. 2686
**BERMAN & SIMMONS, P.A.**
129 Lisbon St.
P.O. Box 961
Lewiston, Maine  04243-0961
(207) 784-3576
**Attorneys for Plaintiffs**

21

# CONSENT FOR DONATION, TESTING, AND TISSUE RELEASE

DATE_____ TIME_____ TECH_____ ME#_____

NEXT OF
KIN_____ RELATION_____ TELE#_____

This is_____of the Stanley Foundation. I have just informed you that
this consent is being witnessed. Is this correct? Yes or No. You have informed me that your
name is_____ and that you are the _____(relationship)
of_____(deceased). Is this correct? Yes or No.

For humanitarian reasons, I seek your authorization and permission to remove the following
tissue:

| Liver | Yes | No | Dura | Yes | No |
| Spleen | Yes | No | Brain | Yes | No |
| Pituitary | Yes | No | | | |

Do you grant permission for the tissue to be used for education and research purposes? Yes or
No.

Additionally, I seek your authorization for a blood sample to determine the medical suitability of
the tissue for the purposes intended. Do you grant such authorization? Yes or No

Lastly, I seek your authorization for the release of the patient's medical information to the
Stanley Foundation and other facilities involved in procuring, processing, and research of these
donated tissue. The information includes hospital records, laboratory results, results of
post-mortem examination and autopsy report. All such information will be kept strictly and
autopsy report. All such information will be kept strictly confidential. Do you grant such
authorization? Yes or No

Would you like to receive correspondence from the Stanley Foundation? Yes or No

Information obtained by:

Name_____        Signature_____

Date_____

Witness_____        Signature_____

Date_____

EXHIBIT

A

Stanley Foundation Brain Bank

Basic Demographic Information for Each Brain Collected

Name: _____

Address if known _____

_____

Address of family/next of kin: _____

_____

_____

Date of Birth: ___/___/___        Age: _____    Sex: _____    Race: _____

Date and official time of death: _____

_____

Circumstances and cause of death: _____

_____

_____

If the body was not found for more than 1 hour, based on the condition of the body and the last person known to have seen the deceased, what is your best guess regarding the approximate actual time of death? _____

Interval between official time of death and when body was refrigerated : _____

Interval between official time of death and when you finished freezing half the brain (or, in those cases where the entire brain is put in formalin, when it was done) (hrs ): _____

Which side of the brain was frozen: R ____ L ____

Tentative psychiatric diagnosis: _____

_____

_____

Medications being taken (if known): _____

_____

_____

Your autopsy number (for future reference if identification is necessary): _____

\brains\demoinf (re / 12/94)

EXHIBIT

B

## Developmental Information

[This sheet will be filled out by the pathologist following a telephone interview with an appropriate family member. It should not be filled out at the time of death but rather after a reasonable interval (e.g. 4-6 weeks) following the death. Part I should be filled out on both patients and controls; Part II should be filled out on patients only

PART I

Name of Individual: _____

Family member who was source of information: _____

Any known complications of pregnancy or birth? (e.g. forceps, toxemia, infections, drug abuse, poor breathing, seizures, cyanosis, etc.) _____

_____

_____

_____

Was childhood development (e.g. talking, walking, bowel training) within normal limits or significantly slower than expected? (e.g., high fevers, seizures, etc.)

_____

_____

_____

How did the person do in school? How far did they go? _____

_____

_____

How did the person do with social relations? [For normal controls, this is a good place to verify again that there were no significant psychiatric problems]

_____

_____

_____

What was the person's job history? _____

_____

_____

EXHIBIT

tabbies

C

Did the person use alcohol or street drugs and if so, how much?

_____

_____

Is there any known history of serious mental illness in the family?  (Please obtain as much detail as is known )  _____

_____

_____

_____

_____

Part II  (Questions specifically regarding individuals with schizophrenia or bipolar disorder )

1   When the person was taking his/her medication, did it significantly improve the symptoms of their illness?  _____

_____

2.  Did the person recognize the fact that he/she had a mental illness and acknowledge the fact, or did the person appear to have no insight into his/her illness?

_____

_____

\brains\deviopmt\7\22\96

## Recorded Telephone or Other Recorded Authorization

I have spoken with _Denise Bourgoin_ , the __MOTHER__ of the patient, who consented
(relationship)

to the donation of the organs and tissues listed above for the purposes noted above

This individual has indicated that he/she has no knowledge of opposition to this donation by any person of a higher or equal category authorized to consent.*

Date/Time: _2/29/00 @ 1130am_  Signature: _Trina S. Charbonneau_

Name: _Trina S. Charbonneau_  Address: _N EOB_
(your name)

Telephone: _1-800-446-6362_

Witness to Consent  Witness to Consent

_Todne J Texeira_  _____
Name  Name

_Todne Tejin_  _____
Signature _NEOB_  Signature

_800·446·6363_  _____
Address/Telephone  Address/Telephone

Consent Documentation

Consent for donation is recorded on Tape # _____, side _____, start # _____, stop # _____

_____

New England Organ Bank
One Gateway Center
Washington Street at Newton Corner
Newton, MA 02158
Phone    800-446-6362
FAX      617-244-8755

New England Eye and Tissue Transplant Bank
50 Staniford Street
Fourth Floor
Boston, MA 02114
Phone    800-462-2566
FAX      617-523-2364



EXHIBIT

tabbies

D

*In agreement c̄ father - speaking on behalf of*

## Consent for Organ and Tissue Donation

① We as **Mother** - of **Michael Bourgain**
  (relationship)                    (name of patient)

hospitalized at **Thayer Campus - Maine General Hospital**
                                            (name of hospital)

hereby authorize and direct that in the event of death, a gift be made to the NEW ENGLAND ORGAN BANK and / or NEW ENGLAND EYE AND TISSUE TRANSPLANT BANK of the organs and tissues of the patient for transplantation. therapy, or research I/We agree to the release of the patient's medical information, including results of post-mortem examination, to the NEW ENGLAND ORGAN BANK and / or NEW ENGLAND EYE AND TISSUE TRANSPLANT BANK.

① / We authorize the performance of all necessary tests and procedures, including testing for the HIV antibody, to determine the medical suitability of the organs and tissues for the purposes intended

**Description of Gift**

1    Organs and tissues donated for transplantation or therapy (please circle desired response.)

| | | | | | |
|---|---|---|---|---|---|
| Kidneys | Yes | ⊗No | Heart for Valves | Yes | No |
| Liver (Hepatocytes) | Yes | ⊗No | Pericardium | Yes | No |
| Heart | Yes | ⊗No | Dura | Yes | No |
| Lungs | Yes | No | Skin | Yes | No |
| Pancreas (Islet Cells) | Yes | No | Eyes | Yes | No |
| Small Bowel | Yes | No | Bone and associated tissues | Yes | No |
| Spleen and Lymph Nodes | Yes | No | Blood Vessels | Yes | No |
| Bone Marrow | Yes | No | Other _____ | Yes | No |

2    If the organs and tissues I/We have donated for transplantation and therapy cannot be used for those purposes I/We (agree) do not agree] that those organs and tissues may be used for medical research.

3    In addition to any organs and tissues noted above that may be used for medical research, I/We also consent to the gift of the following organs and tissues for medical research. (Describe the gift or write "None.")

_____

I/We are not aware of any objection to this gift by the patient or any person of a higher or equal category authorized to consent.*

_____

Signed this _____ day of _____, 20_____**

_____

Name/Relationship                              Name/Relationship (2nd signature optional)

_____

Signature                                      Signature

_____

Address/Telephone                              Address/Telephone

Witness to Consent                             Witness to Consent

_____

Name                                           Name

_____

Signature                                      Signature

_____

Address/Telephone                              Address/Telephone

Page 4 of 24

EXHIBIT
E
exhibit

*00-575*

CONSENT FOR DONATION, TESTING, AND TISSUE RELEASE

DATE_____ TIME_____ TECH_____ ME#_____

NEXT OF KIN Denise Bourg RELATION mother/father TELE# 426-9567

CONSENT RECORDED#_____            SIDE  A  B

STARTED AT_____ STOPPED AT_____

This is Matthew Cyr_____ of the Stanley Foundation.  I
have just informed you that this consent is being recorded.witnessed
Is this correct? (Yes) or no.  You have informed me that your
name is Denise Bourgoin and that you are the Mother_____
(relationship) of Michael Bourgon (decendant).  Is this correct?
(Yes) or no.

For humanitarian reasons, I seek your authorization and
permission to remove the following tissue:

| Liver | (Yes) | No | Dura | (Yes) | No |
| Spleen | (Yes) | No | Brain | (Yes) | No |
| Pituitary | (Yes) | No | | | |

Do you grant permission for the tissue to be used for
education and research purposes? (Yes) or no.

Additionally, I seek your authorization for a blood sample
to determine the medical suitability of the tissue for the
purposes intended.  Do you grant such authorization? (Yes) or
no.

Lastly, I seek your authorization for the release of the
patient's medical information to the Stanley Foundation and
other facilities involved in procuring, processing, and research
of these donated tissue.  The information includes hospital
records, laboratory results, results of post-mortem examination
and autopsy report.  All such informatiom will be kept strictly
confidential.  Do you grant such authorization? (Yes) or no.

Information obtained by:

Name Matthew Cyr_____        Signature Matthew Cyr

Date 2/29/00

Witness Lorie Stevens_____   Signature Lorie Stevens

Date  2-29-2000

EXHIBIT
F.

Stanley Foundation Brain Research Laboratory

Basic Demographic Information for Each Brain Collected

Name: _Michael    Bourgoin_

Address if known:
_RR 2  Box 411    Clinton  ME._

Address of family/next of kin: _Denise  Bourgoin_
_RR 2  Box 411   Clinton  Me._                    _426-9567_

Date of Birth: _5/25/82_     Age: _17_     Sex: _M_     Race: _C_

Date and official time of death: _2/29/2000    7:15 Am_

If the body was not found for more than 1 hour  based on the condition of the body and the last person known to have seen the deceased, what is your best guess regarding the approximate actual time of death? _____

Circumstances and cause of death:

_____

_____

_____

Interval between actual time of death and when body was refrigerated _2 1/2  Hrs_

Interval between actual time of death and when you finished freezing half the brain (or, in those cases where the entire brain is put in formalin, when it was done) (hrs ): _____

Which side of the brain was frozen: R _✓_ L _____

Tentative psychiatric diagnosis:
     _Control_

_____

Medications being taken (if known): _____

_____

List of local hospitals or clinics where person was treated: (We will assume that you will request these records unless you indicate otherwise)

_____

_____

List of non-local hospitals or clinics where person was treated: (We will request these records)

_____

_____

_____

Your autopsy number (for future reference if identification is necessary): _(Ask #  2000 - 0375- A_

_Weight : 1610_

_Path : Greenwald_

rev 6/15/99

EXHIBIT

tabbies

G

Stanley Foundation Brain Research Laboratory

Developmental Information

This sheet will be filled out by the pathologist following a telephone interview with an appropriate family member. Part I should be filled out on both patients and controls; Part II should be filled out on patients only

PART I

Name of Individual:

Michael    Bourgoin

Family member who was source of information:

Denise  &  David  Bourgoin          Mother / Father

Any known complications of pregnancy or birth? (E.g. forceps, toxemia, infections, drug abuse, poor breathing, seizures, cyanosis, etc.)

None

Was childhood development (e.g. talking, walking, bowel training) within normal limits or significantly slower than expected? (e.g. high fevers, seizures, etc.)

Excellent

How did the person do in school? How far did they go?

Senior in 12th Grade.

How did the person do with social relations? (For normal controls, this is a good place to verify again that there were no significant psychiatric problems)

Excellent

What was the person's job history?

Student

Did the person use alcohol or street drugs and if so, how much?

None

EXHIBIT

H

Is there any known history of serious mental illness in the family? (Please obtain as much detail as is known.)

NONE

PART II (Questions specifically regarding individuals with schizophrenia or bipolar disorder)

1   When the person was taking his/her medication, did it significantly improve the symptoms of their illness?

2.   Did the person recognize the fact that he/she had a mental illness and acknowledge the fact, or did the person appear to have no insight into his/her illness?



## CHAPTER 4. MONITORING MECHANISMS
Current through December 2004

### APPENDIX A
PERMISSION FOR ORGAN DONATION BY NEXT OF KIN [FNa1]

Hospital Name: _____

I /we _____ of _____ ( _____ )
  next of kin/guardian     street address     town and state     relationship to patient

hereby give my/our permission to _____ and the medical staff thereof, to
                         hospital name

authorize the removal and subsequent donation of the following organ (s) or tissue(s)

__ any appropriate organ

__ kidney __ eye/cornea __ heart __ heart/lung __ liver __ pancreas __ bone

of _____ to be used for such purposes, including organ transplant,
  name of patient/deceased

as _____ may deem best, including transfer of such organs to
  regional hospital name

medical Institutions located outside the State of Maine

Permission is further granted for the -transfer of the patient to the hospital where the removal of the above mentioned organ(s) will occur and for the performance of any procedures -the are determined necessary in association with the removal of these organs

It is understood that if permission is given prior to the actual death of _____,
                                                   patient name

it will become effective only upon such death; and such permission may be relied upon by the _____ , members of its medical staff and any medical institutions which may
regional hospital name

ultimately receive the organs unless said permission is revoked in writing prior to pronouncement of death and removal of the donated organs

_____       _____
signature of next of kin/guardian                      witness

_____       _____
street                                      witness

_____
City state ZIP

Witnessed to obtaining signature this _____ day of _____, 19

Permission obtained by _____       _____
                           Name                        title

[FNa1]. The following is a list, in order of priority, of persons so authorized: patient's spouse, patient's adult son or daughter, patient's mother or father, patient's adult sister or brother, patient's guardian at the time of death, other person authorized to dispose of patient's body  (See 22 MRSA §2902 (21) )

Service

**STATE OF MAINE**

SUPERIOR COURT
KENNEBEC                        ss.
Docket No. __CV-05-121__

DISTRICT COURT
Location _____
Docket No _____

David Bourgoin and
Denise Bourgoin                 Plaintiff

v.

**SUMMONS**

The Stanley Medical            Defendant
Research Institute, et al.
5430 Grosvenor Lane, Ste 200  Address
Bethesda, MD 20814

The Plaintiff has begun a lawsuit against you in the (District)(Superior) Court, which
holds sessions at (street address) __95 State Street__, in the
Town/City of __Augusta__, County of __Kennebec__, Maine.
If you wish to oppose this lawsuit, you or your attorney **MUST PREPARE AND SERVE A
WRITTEN ANSWER** to the attached Complaint **WITHIN 20 DAYS** from the day this
Summons was served upon you. You or your attorney must serve your Answer, by delivering a
copy of it in person or by mail to the Plaintiff's attorney, or the Plaintiff, whose name and address
appear below. You or your attorney must also file the original of your Answer with the court by
mailing it to the following address: Clerk of (District) (Superior) Court, _____
____95 State Street_____, __Augusta__, Maine _04330_
(Mailing Address)                    (Town, City)            (Zip)
before, or within a reasonable time after, it is served.

**IMPORTANT WARNING**

**IF YOU FAIL TO SERVE AN ANSWER WITHIN THE TIME STATED ABOVE,
OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE
COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE
ENTERED AGAINST YOU IN YOUR ABSENCE FOR THE MONEY DAMAGES
OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS,
YOUR EMPLOYER MAY BE ORDERED TO PAY PART OF YOUR WAGES TO
THE PLAINTIFF OR YOUR PERSONAL PROPERTY, INCLUDING BANK
ACCOUNTS AND YOUR REAL ESTATE MAY BE TAKEN TO SATISFY THE
JUDGMENT. IF YOU INTEND TO OPPOSE THIS LAWSUIT, DO NOT FAIL
TO ANSWER WITHIN THE REQUIRED TIME.**

If you believe the plaintiff is not entitled to all or part of the claim set forth in the Complaint
or if you believe you have a claim of your own against the Plaintiff, you should talk to a lawyer. If
you feel you cannot afford to pay a fee to a lawyer, you may ask the clerk of court for information
as to places where you may seek legal assistance.

(Seal of Court)

Date: __July 1, 2005__

Linda S. Mason
Clerk

Steven D. Silin
(Attorney for) Plaintiff
PO Box 961                      Address
Lewiston, ME 04243-0961
(207) 784-3576                  Telephone

CV-030, Rev. 09/97

STATE OF MAINE

County of _____ ,ss.

On _____ (date), I served the Complaint (and Summons) upon Defendant _____
_____ by delivering a copy of same at the following address:
_____

☐   to the above-named Defendant in hand

☐   to _____ (name), a person of suitable age and discretion who
    was then residing at Defendant's usual residence.

☐   to _____ (name), who is authorized to receive service for
    Defendant.

☐   by (describe other manner of service):
    _____
    _____

**Costs of Service:**

Service:   $ _____
Travel     $ _____
Postage    $ _____          _____
Other  $ _____                      Signature

Total $ _____                _____
                                                Agency

Service

SUPERIOR COURT
KENNEBEC                  , SS.
Docket No. CV-05-121

**STATE OF MAINE**

DISTRICT COURT
Location _____
Docket No _____

David Bourgoin and
Denise Bourgoin            Plaintiff

v.

**SUMMONS**

E. Fuller Torrey, M.D.      Defendant
et al
5430 Grosvenor Ln. Ste 200  Address
Bethesda, MD 20814

The Plaintiff has begun a lawsuit against you in the (District)(Superior) Court, which
holds sessions at (street address)    95 State Street    , in the
Town/City of   Augusta   , County of   Kennebec   , Maine.
If you wish to oppose this lawsuit, you or your attorney **MUST PREPARE AND SERVE A
WRITTEN ANSWER** to the attached Complaint **WITHIN 20 DAYS** from the day this
Summons was served upon you. You or your attorney must serve your Answer, by delivering a
copy of it in person or by mail to the Plaintiff's attorney, or the Plaintiff, whose name and address
appear below. You or your attorney must also file the original of your Answer with the court by
mailing it to the following address: Clerk of (District) (Superior) Court, _____
   95 State Street   ,   Augusta   , Maine  04330
        (Mailing Address)              (Town, City)              (Zip)
before, or within a reasonable time after, it is served.

## IMPORTANT WARNING

**IF YOU FAIL TO SERVE AN ANSWER WITHIN THE TIME STATED ABOVE,
OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE
COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE
ENTERED AGAINST YOU IN YOUR ABSENCE FOR THE MONEY DAMAGES
OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS,
YOUR EMPLOYER MAY BE ORDERED TO PAY PART OF YOUR WAGES TO
THE PLAINTIFF OR YOUR PERSONAL PROPERTY, INCLUDING BANK
ACCOUNTS AND YOUR REAL ESTATE MAY BE TAKEN TO SATISFY THE
JUDGMENT. IF YOU INTEND TO OPPOSE THIS LAWSUIT, DO NOT FAIL
TO ANSWER WITHIN THE REQUIRED TIME.**

If you believe the plaintiff is not entitled to all or part of the claim set forth in the Complaint
or if you believe you have a claim of your own against the Plaintiff, you should talk to a lawyer. If
you feel you cannot afford to pay a fee to a lawyer, you may ask the clerk of court for information
as to places where you may seek legal assistance.

(Seal of Court)

Date:   July 1, 2005

Linda S. Mason

Clerk

Steven D. Silin
(Attorney for) Plaintiff
PO Box 961              Address
Lewiston, ME 04243-0961
(207) 784-3576           Telephone

CV-030, Rev 09/97

STATE OF MAINE

County of _____ ,ss

On _____ (date), I served the Complaint (and Summons) upon Defendant _____
_____ by delivering a copy of same at the following address:
_____

☐   to the above-named Defendant in hand.

☐   to _____ (name), a person of suitable age and discretion who
     was then residing at Defendant's usual residence.

☐   to _____ (name), who is authorized to receive service for
     Defendant.

☐   by (describe other manner of service): _____
     _____
     _____

**Costs of Service:**

Service:   $_____
Travel     $_____
Postage    $_____
Other  $_____

Total $_____

_____
Signature

_____
Agency